**SIMPSON et al. v. STANDARD OIL CO. OF CALIFORNIA.**

No. 2849–A.

First Division. Juneau.

March 2, 1931.

Hellenthal & Hellenthal, of Juneau, for plaintiffs.

H. L. Faulkner, of Juneau, for defendant.

HARDING, District Judge.

This case comes before the court upon the motion of the defendant to direct a verdict, on the ground there is not sufficient evidence to submit to the jury on the issues of the·case.

The testimony has been long, and as to certain respects it has been conflicting, but, as to other parts, there is no substantial conflict in the evidence.

Plaintiff's complaint, in brief, alleges negligence on the part of the defendant company, though which negligence gasoline was spilled upon the deck of the gas boat Alco, which was burned. The negligence alleged was: First, a defective valve in the nozzle, so that the gasoline could not be shut off; second, that the plaintiff was prevented from turning off the gasoline as it started to overflow. He has also alleged that the gasoline on board the Alco was ignited by a spark of static electricity generated by gasoline flowing through the delivery equipment of the defendant, and that a violent explosion and fire occurred aboard the Alco, and that the electric spark was caused by the negligent equipment of the defendant.

According to the testimony of the plaintiff, the tank was overflowing and gasoline spilled about the deck; and there is evidence to the effect that the spilling of gasoline was due to defendant's negligence. That gas was spilled and that the tank was overflowing, I feel is established, and it may have been due to defendant's negligence, under the evidence; but, unless the gasoline explosion and fire on board the Alco was caused by a static spark arising through the negligence of the defendant company, there is no evidence in this case connecting the overflow with the explosion and fire.

The mere overflow of gasoline, unconnected with the explosion and fire, would not constitute a case for damages against the defendant, and in the plaintiff's pleading and his evidence he has attempted to exclude all other possibilities of fire except that arising from a static spark.

As I view this case, there is no greater probability of the overflowed gasoline being ignited by a static spark than there was of the gasoline in the tank being ignited; in fact, under the evidence it would seem that the probability of ignition by a static spark would be lessened and

possibly entirely excluded if there was a constant overflow at the intake, because of the undisputed evidence to the effect that pure gasoline, or a very rich mixture is not as inflammable as a vapor containing a higher percentage of air, a view which coincides to a large extent with common knowledge upon that subject.

Plaintiff's contention is that the spark occurred at the intake of the tank, and the witness Cyrus ..ckson, who testified for the plaintiff, and who was the man filling the tank, stated that at no time was the nozzle taken outside of the intake; and, if the metal parts of the intake were overflowed, the contact of the nozzle from which it is contended the static spark sprung to the metal parts of the intake would necessitate the spark occurring either in pure gasoline or a very rich mixture of gasoline, a condition less liable to cause a fire than if a spark occurred at the intake of a tank which was not in fact full. So it appears to me that under the evidence and the plaintiff's contention the negligence of the defendant, if any existed, resulting in the overflow of the tank, is not the question with which we are primarily interested in this case.

In other words, the plaintiff's case must rest, under his pleading and his proof, upon the theory that the static spark was generated, and generated through the neglect of the defendant in providing defective equipment and appliances for the delivery of gasoline on board the Alco. In this regard it must be borne in mind that the burden of proof is on the plaintiff to prove his case, and, in considering the questions arising upon the motion for a directed verdict, he must have produced substantial evidence, both to show that the explosion and fire were caused by a static spark, and that the appliances used by the defendant company in delivering the gasoline were either defective or were of such nature that the use of them would constitute negligence; that is to say, that they were not of such nature that a reasonable prudent individual or company would use them in delivering a dangerous commodity such as gasoline must be conceded to be.

■ As to the first point, has the defendant proved by substantial evidence that a static spark caused the explosion and fire in question? I am unable to see that he has done so. The pleadings in this case allege a violent explosion. All of the witnesses for the plaintiff have testified to an explosion, all of the witnesses for the defendant, in the vicinity of the plant on the day of the accident, have testified to an explosion, and I think the evidence must be taken as conclusive in this case that an explosion in fact occurred, and all the evidence in this case, so far as I have been able to determine, also shows that the explosion preceded the fire.

But as to where such explosion occurred presents another question. The plaintiff in his testimony does not indicate in any way the point at which either the explosion or the fire occurred. The witness Cyrus Jackson, who was standing over the intake, says he does not know where the explosion and fire originated. In this regard the plaintiff must rely upon the witness Malacoff, who says that it seemed to originate at the mouth of the tank over which the witness Cyrus Jackson was stooping, and the witness Mrs. Cyrus Jackson, who testified that the explosion came from the outside.

As to the testimony of Mrs. Cyrus Jackson, while I feel the court should be very careful in taking into consideration her prior statement, stating that at the time of the accident she was sweeping the floor and that the explosion apparently came from the engine room, showing an entirely different version from that to which she testified, because ordinarily such testimony would be for the jury, still, in viewing what is and what is not substantial testimony, I feel that the court cannot ignore such contradictions between a statement made under oath immediately following the accident and the statement made on the stand over three years later. But, from the undisputed evidence of the experts in this case, as well as from common knowledge on this subject—for gasoline to explode, except in an exceptionally large quantity, the gas-

oline or the vapor must be confined in some way, and gasoline on the deck of a boat would not create an explosion as the term is generally understood—and according to the testimony, as before stated, the tank could not have exploded, because it was filled with gasoline, a fact borne out by the evidence that the tank was not in fact disrupted. Nor could the force of any explosion that occurred in the tank, assuming by any chance that it was not full, coming as it must through a narrow intake, have had the force the plaintiff's witnesses show this explosion to have had. In this respect, not only did Mrs. Cyrus Jackson testify that it was of considerable force, but the witness Cyrus Jackson, who was in the best position to know, testified it was of such force as to knock him from the intake into the hatch of the boat, which was some distance from where he was standing; and the testimony of the plaintiff's witness Malacoff, which was to the effect that the explosion lifted Cyrus Jackson into the air and knocked him back into the hatch.

Under these circumstances, not only does it appear to me that there is no substantial evidence to the effect that the ignition which gave rise to the explosion and fire occurred at the intake, but the evidence precludes, in my opinion, such an interpretation, and therefore precludes the possibility that the explosion and fire occurred through a static spark at the intake.

Plaintiff, to strengthen his position that the accident was caused by a static spark at the intake which was not seen and under the circumstances probably could not have been seen, has attempted to exclude all other possible causes of the accident. On a gas boat used as living quarters, with electric wiring for lighting and other purposes, and operated by a gas engine generating while in operation considerable heat, this is not easy to do; and I feel no undue burden should be placed on plaintiff in respect to such proof, but in certain respects, at least, I believe the plaintiff should exclude to a reasonable certainty such other possibilities, particularly in view of the testimony of Cyrus

Jackson that he saw a gasoline mist coming from the air vent on the tank into the cabin of the boat, which air vent he tried to turn off but could not turn off. In particular I feel that the possibility of fire from the cooking stove was not excluded with reasonable certainty. That there was a fire in the stove in the cabin in the earlier part of the day is admitted; and the evidence as to this fire being out is not very convincing. Plaintiff testified that he drank some lukewarm coffee, which must have been heated on the stove, at about 11 of that day, and in his prior sworn statement, taken shortly after the accident, said that the cooking was finished at about 12, which would cast considerable doubt on his other testimony as to the absence of fire in the stove. Live coals, under certain conditions, are known to persist for a considerable period, but there is no evidence that the fire in this stove was put out or that it had been in any way examined to show it had, in fact, died out. So it seems to me that the possibility of fire from this source was not excluded to the extent I believe necessary to give much weight to the contention of plaintiff that the explosion and fire must have come from a static spark because it could have been caused in no other way.

As to the second point, as to whether or not the defendant was negligent in using the equipment and appliances which it used to fill the Alco, it seems to me that the only evidence upon which this can be based is the evidence of their expert witness, Mr. Schombel, and that their theory to a large extent must stand or fall upon his testimony as to what was, in his opinion, the cause of the fire. As to his testimony upon which the probability of such spark occurring must be predicated, it cannot be disregarded that the sole hypothetical question upon which his opinion is based makes no reference to any electrical bond established by the defendant company between its gasoline tank and the Alco. In other words, so far as the testimony of Mr. Schombel is concerned his opinion

is not based upon the facts as they were subsequently shown to exist. The static spark might very readily be produced upon the conditions stated to Mr. Schombel, and not produced upon the conditions as shown at the plant; for the defendant has shown by uncontradicted evidence that not only was the tank on the ground, but that its delivery system was grounded electrically by three electric bonds between the pipe line and earth, between the tank and the end of the nozzle, and that the last of these bonds ·was a connection with salt water at the reel of the gasoline hose. This evidence has been shown by defendant, but it seems to me that the burden was on the plaintiff to show that the system was not properly bonded. Certainly, if the defendant had the electrical connections with the earth shown, the burden was on the plaintiff to show that under such conditions the spark would probably have been created. This was not done.

It is true that there was some testimony upon cross-examination of Mr. Schombel as to the point to which a connection with ground would be sufficient, but in this regard his testimony would not in any sense be positive. He states it would depend upon the resistance of the metal. There has been much expert testimony to show that both a metal pipe or a metal hose would have almost negligible resistance electrically, but, if the generation of the spark depended upon the resistance in the metal hose or the pipe between the nozzle and some point where the connection was grounded, then the burden was upon the plaintiff to show that, because of the resistance shown to exist in the system used, the spark would be generated, notwithstanding the electrical bonds shown by the evidence.

Mr. Schombel also testified that in his opinion a wire and clamp fastened to the engine of the boat would preclude the possibility of any static spark. The testimony of the defendant shows that, while it had no such equipment, it had a static chain attached to the nozzle which ordinarily would connect at the nozzle with the metal parts of the boat and through them to salt water in such a man-

ner as to prevent the formation of a static spark. There is some testimony, or at least some of the witnesses of the plaintiff do not remember such a chain in the nozzle used, but, in the face of the positive testimony of the defendant in this regard, I feel that the failure to remember such a chain would not constitute substantial evidence of its absence. But the absence of such a chain would not constitute negligence, unless the electrical bonding which is shown was ineffectual to prevent the accumulation of static electricity at the nozzle of the hose used. It is conceded by all that contact of the nozzle with the intake which was connected with the tank which was in turn connected to the engine and through the shaft of the engine to the propeller and salt water was a perfect connection, and would prevent the formation of a static spark. The chain might be an additional safeguard, but, as stated before, the question of negligence does not depend on whether there was a chain or whether there was not a chain, provided the other electrical bonding was sufficient to relieve the accumulation of static electricity that might be created at the nozzle. Nor can the court go so far as to hold the defendant company liable for a failure to provide a connection which in the opinion of the plaintiff's expert would have been a sufficient and proper connection, provided it had other sufficient and proper connections, although they differ from the one which he suggests.

It is my opinion that the plaintiff has not only failed to introduce substantial evidence to show that the defendant company was negligent in furnishing gasoline to plaintiff through a system such as the evidence shows was used, but I am unable to find where he has introduced any evidence to show defendant was negligent in this regard.

I have examined with care the case of Standard Oil Company of New York v. R. L. Pitcher Co. (C.C.A.) 289 F. 678, so strongly relied on by plaintiff. That case, from the decision of the court, apparently differs from the instant case as to the sufficiency of the evidence to show that the fire occurred at the intake and the exclusion of

other reasonably possible causes of fire other than a static spark. And in that case a regular part of the safety equipment ordinarily used and apparently necessary was shown to have been broken and not used at the time of the accident. Also the loading of an automobile tank resting upon rubber wheels and therefore constituting an insulated body is entirely different from the loading of the gas tank of a boat shown to have been thoroughly grounded in salt water.

Therefore, because I am of the opinion that the plaintiff has failed to introduce substantial evidence to show that the fire was caused by a static spark, and also because it has failed to show that the defendant did not exercise that reasonable precaution which it would be required to exercise in handling a dangerous product such as gasoline, I am compelled to grant the motion of the defendant to direct a verdict for the defendant in this case.