REUBEN BERNSTEIN, Appellant, *v.* SAMUEL GREENFIELD, Respondent.

Argued May 31, 1939; decided July 11, 1939.

*Leo Fixler* and *Leo Rosenberg* for appellant.

*Harold H. Corbin*, *William F. Martin* and *Lorenz J. Brosnan* for respondent.

HUBBS, J.    This is an action to recover damages sustained as a result of malpractice.  Defendant's assistant, while injecting with a hypodermic needle in the tonsillar area of the plaintiff, broke the needle and the end of it became embedded in plaintiff's throat.  Plaintiff does not claim that there was negligence in the breaking of the needle. The needle is still embedded in plaintiff's throat and several operations to remove it have been unsuccessful.

The defendant is a specialist in ear, nose and throat diseases and had practiced twenty-one years at the time of the trial; he had interned at Manhattan Eye and Ear Hospital, studied in Vienna, was full attending physician at the Beth Moses Hospital of Brooklyn, assistant surgeon at the Brooklyn Eye and Ear Hospital, and attending physician at the Wyckoff Heights Hospital.  Plaintiff went to defendant to have his tonsils removed.  Defendant's

assistant, Dr. Lieberman, was assigned to inject novocaine. When the needle broke Dr. Lieberman called the defendant and showed him the place where the needle entered and pointed out the pinpoint made by the insertion. They examined the area and determined that since the needle point might be in the tonsil it would be best to remove the tonsil. Having removed the tonsil defendant found that the needle was not there and must have been drawn further into plaintiff's throat. Defendant then started to probe for the needle but after about forty-five minutes, being unsucessful in finding it, rested. Plaintiff was given a brief rest and defendant then probed again for about twenty-five minutes. Again the search was unsuccessful and plaintiff was told to go home and return in about ten or twelve days. Plaintiff was in bed for about a week, and suffered intense pain. Upon his return to the defendant's office he was sent to another doctor for an X-ray, and upon defendant's advice submitted to another operation of probing for the needle. This was the last attempt by the defendant to remove the needle and was unsuccessful. Plaintiff shortly thereafter entered Dr. Lempert's Hospital to have the needle removed. All attempts to remove it have been unsuccessful.

The trial court found a verdict for the plaintiff of $6,000. The Appellate Division reversed on the law. The question here is whether there was evidence which justified sending the case to the jury. While the reversal was on the law, it seems clear from the decision of the Appellate Division that it was the weight of the evidence that the court passed on rather than the law.

The specific malpractice relied on was the failure to take X-rays immediately to see where the needle was and in probing for the needle when it would be likely that the probing would push the needle in further. There was evidence both ways on whether the method followed by the defendant was proper practice. Plaintiff relies on the testimony of Dr. Harry G. Goldman, a physician and surgeon. He is a graduate of New York University and Cornell Medical College. He was a special student in anatomy of

the neck during the years 1922, 1923 and 1924. He specializes in nose, throat and ear diseases and has done so since 1918. For twenty years he was associate surgeon in the field of nose, throat and ear in the Montefiore Hospital, and concurrently for twelve years in a similar capacity in the Harlem Hospital of New York. He now has a similar position at the Metropolitan Hospital at Welfare Island. He qualified as an expert and while there was strong evidence to the contrary his views must be given weight. His testimony tended to establish that the defendant's operation was " a departure from approved methods in general use " at the time, the result of which rendered the defendant liable under the law as stated in *Pike* v. *Honsinger* (155 N. Y. 201, 209, 210).

Dr. Goldman's testimony was direct and unequivocal. He said it was not good and proper practice under the circumstances to proceed with the tonsilectomy; that it was not good practice to attempt to take out the needle without first having taken an X-ray; that it was not good practice to let the patient go home and be without medical attention for ten or twelve days after the breaking of the needle; that a needle, when it breaks, is immediately sucked into the muscles; that it cannot be said that a superficial probing would do no harm because " there is nothing to seize superficially; " and that it is not possible to take hold of the needle after you take out the tonsil. He would not say that there was no possibility of success in the method employed by the defendant " because coincidence plays a big part." He testified that the only way to approach the needle point would be to get it from the outside by an incision; that " if needles break off in the mouth or that region, the only way to approach it is from the outside; " that the possibility of getting it from the inside is " very very slim; " that before any attempt was made to take out the needle X-rays should have been taken; that the only way to get the needle was externally through the neck; that " Absolutely. There is no other way ; " that he would have attempted to get the needle out in only one way, and

that from the outside; that it was improper practice to attempt to get the needle without an X-ray; that he would have taken X-rays and cut from the outside; that the attempts of the defendant were a folly; that the only practical way to get the needle out was from the outside; that the gist of the error of the defendant was that he did not take X-rays before attempting to get out the needle; and that this amounted to a failure to follow proper and approved practice.

This testimony was not merely to the effect that the witness would have done the work differently, but rather that the method adopted was not proper and approved practice. The Appellate Division thought that the witness' testimony was nullified by his admission that probing might have been successful. The witness merely allowed for coincidence. His testimony was that the defendant might have gotten hold of the needle but that the " proper and approved practice " was to get it from the outside.

While the evidence in favor of the defendant is strong and on the weight of the evidence the result reached by the Appellate Division may be correct, it cannot be said that there is no evidence to support the finding of the jury. There is, in fact, strong evidence to support its finding. The testimony of the witness was logical and credible. Certainly it cannot be held as a matter of law that there was no evidence which justified the submission of the case to the jury.

As the Appellate Division erroneously reversed upon the law and dismissed the complaint we are required to reinstate the verdict. (The Powers of the New York Court of Appeals, by Cohen, p. 442; *Woicianowicz* v. *Philadelphia & Reading Coal & Iron Co.*, 232 N. Y. 256.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgment accordingly.