THOMAS M. CORNBROOKS, Appellant, *v.* TERMINAL BARBER SHOPS, INC., Respondent.

Argued January 25, 1940; decided March 5, 1940.

*David Mackay* and *Jerome H. Adler* for appellant. The evidence not only presented a question of fact as to defendant's negligence, but supported the jury's finding thereof. (*Pratt* v. *Edwards & Son*, 227 App. Div. 210; *Bressler* v. *N. Y. Rapid Transit Corp.*, 270 N. Y. 409; *Griffen* v. *Manice*, 166 N. Y. 188; *Storms* v. *Lane*, 223 App. Div. 79; *Welch* v. *Enright*, 257 App. Div. 685; *Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567; 260 N. Y. 604.) Plaintiff's medical testimony established that the use of the vibrator in the manner testified to by plaintiff was a competent producing cause of the injury sustained by him. All that defendant's experts did was to testify that their opinion was otherwise. The question of fact thus raised was decided by the jury adversely to defendant and should not be disturbed upon appeal. (*Stubbs* v. *City of Rochester*, 226 N. Y. 516; *Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1; *Bernstein* v. *Greenfield*, 281 N. Y. 77.)

*George W. Whiteside* and *Ralph D. Ray* for respondent. Plaintiff failed to prove that the detachment of retina was caused by the vibrator. The verdict of the jury was based upon pure speculation as between a number of equally probable and possible causes. (*Scharff* v. *Jackson*, 216 N. Y. 598; *White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131; *Kalinowski* v. *Ryerson & Son*, 242 App. Div. 43; 270 N. Y. 532; *Warner* v. *New York, O. & W. Ry. Co.*, 209 App. Div. 211; *Searles* v. *Manhattan Ry. Co.*, 101 N. Y. 661; *Yaggle* v. *Allen*, 24 App. Div. 594; *Ford* v. *McAdoo*, 231 N. Y. 155; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Grant* v. *Pennsylvania & N. Y. Canal & R. R. Co.*, 133 N. Y. 657; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *Baudenbach* v. *Schwerdtfeger*, 224 App. Div. 314; *Antowill* v. *Friedmann*, 197 App. Div. 230.) There is no proof of negligence. On the contrary, the uncontradicted evidence of the defendant establishes that there was no negligence. (*Perry* v. *Rochester Lime Co.*, 219 N. Y. 60; *McKinney* v. *N. Y. Consolidated R. R. Co.*, 230 N. Y. 194; *Burke* v. *Witherbee*, 98 N. Y. 562; *Paul* v. *Consolidated Fireworks Co.*, 212 N. Y. 117; *DeSalvo* v.

*Stanley-Mark-Strand Corp.*, 281 N. Y. 333; *Laffin* v. *Buffalo & Southwestern R. R. Co.*, 106 N. Y. 136.)

LEWIS, J. The Appellate Division has reversed " upon questions of law " a judgment of the Supreme Court entered in favor of the plaintiff upon a jury's verdict and has dismissed the complaint upon the merits. Accordingly, upon our review of the judgment entered upon the Appellate Division's reversal our problem is to determine " whether there was evidence which justified sending the case to the jury." (*Bernstein* v. *Greenfield*, 281 N. Y. 77, 79.)

The plaintiff seeks damages for loss of the sight of his left eye which is alleged to have resulted from the negligent operation of an electric vibrator by a barber employed by the defendant.

On the morning of January 9, 1934, the plaintiff entered one of defendant's shops in the city of New York where his hair was cut and he was shaved. Nothing was said by the plaintiff or by defendant's barber as to the use of a vibrator on plaintiff's face. However, while plaintiff was still reclining in the barber's chair, with his eyes closed, he felt an electric vibrator being applied to his scalp. His testimony is: " * * * I felt the barber start some sort of a vibrating machine on my head. He put it around on my hair, and then he brought it down over this [left] eye on to the eye, and down on to the cheek. * * * It was an unpleasant jarring sensation but there was no pain. Q. How many times did he pass that over the eye? A. Only the once, as he brought it from my head to my cheek."

The plaintiff sensed no further discomfort until the afternoon of the same day when he became aware of a dimness of vision in his left eye which became more pronounced during the three days which followed. Meantime he consulted a physician who recommended an eyewash and medical applications, which proved ineffective. On January 15th, less than a week after his experience in the defendant's shop, the plaintiff consulted an ophthalmologist, who found the vision of his left eye reduced to ten per cent

of normal and discovered that the retina had been torn and detached. The plaintiff immediately underwent prescribed hospital treatment and an operation, which failed to restore the injured retina.

In addition to proof of these facts we find in the record evidence from which the jury could have found that prior to the time when plaintiff went to the defendant's shop his eyes were normal except for a moderate degree of near-sightedness which had been corrected by his use of glasses; that except for the fact that the retina in his left eye had been torn and detached and that the eye itself tested only ten per cent of its normal vision, plaintiff's eyes were free from disease when he underwent an examination six days after the application of the vibrator by the defendant's barber. Upon the question of causation and to meet proof that the most common causes of a retinal detachment are trauma, jarring or body strain, there was testimony by the plaintiff that he had undergone no unusual body strain and had sustained no blow or jarring of any kind before or after the date when he went to defendant's shop except on the occasion when a vibrator was applied to his head, face and left eye.

The inquiry upon the trial was thus narrowed to the question whether the proximate cause of the retinal injury which the plaintiff sustained between January 9th and 15th was a breach of duty owed to the plaintiff by defendant's barber when, on the former date, he applied to the plaintiff's eye an electric vibrator. As we view the evidence that question was one of fact upon the determination of which the following evidence became competent and material:

The plaintiff called two ophthalmologists, whose credibility was for the jury and whose qualifications as experts upon the structure and treatment of the eye were given at length. From those experts came testimony that, in addition to a direct blow, the type of pressure upon the eye which is most likely to cause a retinal detachment, especially when applied to an eye which is myopic or nearsighted, is a jarring

or shaking impact the effect of which is to set up a vibrant pressure upon the vitreous humor or jelly-like substance which fills the eye and gives support to the retina. There is also expert testimony that a detachment of the retina is not accompanied by pain at the time of the injury nor does the injured eye register disorder for several hours.

Finally, in answer to hypothetical questions which we regard as proper in form and which were based upon record proof of material facts, the plaintiff's experts testified that the application of an electric vibrator to plaintiff's left eye on January 9th would have been a competent producing cause of the retinal detachment which was discovered during the examination of plaintiff on January 15th and from which blindness in that eye ensued.

We are not in accord with the assertion by defendant's counsel that there was nothing before the trial court upon which the jury could have found that the defendant's barber, in the exercise of reasonable care, should have anticipated resulting injury to the plaintiff from the manner in which the vibrator was applied. In addition to knowledge common to men of reasonable intelligence that the eye is one of the most sensitive and delicate organs of the human body, we find admissions by barbers called as experts, including the defendant's own witnesses, that it was not the practice in shops of New York city to apply electric vibrators over a customer's eyes. Indeed, there is testimony by one of defendant's experts — a barber whose experience covered forty years — that " When the vibrator is applied to the surface of the forehead or the sides around the eye, no barber, in practice, will put his fingers, with a vibrator on his hand, against the eye or in the eye regions. Q. That would be a very bad thing to do, would it not? A. It would be." At another point, in answer to a question by defendant's counsel, the same witness said, " The professional barber never touches his fingers over the eyeball. That is entirely out."

It is also said that upon the present record the plaintiff failed to prove a cause of action against the defendant

because the chain of causation, between the act of defendant's barber on January 9th and the time when plaintiff's injury was discovered on January 15th, is not intact. In support of that assertion the defendant cites testimony by its experts that the injury to plaintiff's eye might have been caused by a jolt or jarring sustained in a subway train, a taxicab or a bus which the plaintiff admits were the type of conveyances in which he rode on January 9th after leaving the defendant's shop. But the significant fact is that the record contains no proof that plaintiff had been jarred or jolted at any time and, to the contrary, the plaintiff denied such an occurrence.

It is not enough that the defendant, in an effort to break the chain of causation, should prove that plaintiff's injury *might* have resulted from other possible causes, nor is it required of the plaintiff that he eliminate by his proof all other possible causes. " The existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident, does not require a holding that plaintiff has failed to make out a *prima facie* case. It is enough that he shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred." (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1, 7.)

Applying to this case the rule of *Bernstein* v. *Greenfield* (*supra*), we cannot say as matter of law on the record at hand that there was no evidence which justified sending the case to the jury. Rather do we find proof of facts from which the negligence of defendant's employee is a fair inference and in addition there is proof of facts from which the jury with reason may have found a causal connection between defendant's negligence and plaintiff's injury.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Judgment accordingly.