Margaret Mary J. Mangan, J.
Action in negligence and malpractice, tried without a jury. Findings of fact and conclusions of law were waived.
Defendant is a dentist and rendered professional services to the plaintiff in the rehabilitation of her mouth by correcting an improper bite. The plaintiff claims the work was negligently and improperly performed, and seeks damages of the defendant.
In June of 1948 the defendant X-rayed and examined the mouth of the plaintiff. After examination he found incomplete root canal therapy, gingival recession, deep pockets and an improper bite. He advised the plaintiff her bite could be corrected by using crowns and jackets, instead of braces, for the sum of $1,250, which amount the plaintiff paid. In the course of treating the plaintiff, the defendant gave prophylactic treatment, extracted teeth, made a removable bridge and fitted the back teeth with crowns and the front teeth with porcelain jackets. The work was completed in February, 1949. The plaintiff testified that after the work was finished she complained of *670 a black line of demarcation and space around the crowns and jackets next to the gum line, and the defendant told her this was not important; and later she complained of jagged edges on the crowns and jackets interfering with the brushing of her teeth, but again nothing was done.
In September of 1949 pain developed in the lower left side of plaintiff’s face, which became swollen and discolored. Upon examination the defendant diagnosed the cause as an abscess in one of the crowned teeth. He drilled a hole through the top of the crown and after six weeks of root canal therapy the condition cleared up. In March of 1951 the adjacent crowned tooth developed an abscess, which the defendant treated similarly. In February of 1952 the right side of the plaintiff’s mouth became inflamed and the defendant found another abscessed tooth. The defendant took an X ray of that tooth and all the remaining teeth and commenced root canal therapy on the abscessed tooth, but the plaintiff refused to permit the defendant to continue with the work. She testified she would not permit the defendant to go ahead with the work until she consulted with her physician and another dentist. She testified that she returned to inform the defendant her physician found her to be in good health. The defendant testified he sent the plaintiff to her physician to see if any systemic disorders were involved and that when she returned she informed him she was lacking in vitamin A. The plaintiff consulted Dr. Martin M. Grunberg and Dr. George G. Trattner, both specialists in mouth rehabilitation, who examined the plaintiff’s mouth and independently of each other attributed the abscesses and rampant decay they found in her mouth to improper fitting of the crowns and jackets. The defendant offered to re-do any work that was required to be done over from a dental viewpoint. The plaintiff refused to allow the defendant to do any further work.
Immediately thereafter the plaintiff engaged the services of Dr. Grunberg and paid him $2,300 as a fee. He removed the old jackets and crowns, ground the teeth, and after taking casts and measurements fitted new crowns and jackets to the teeth. At the same time another specialist, Dr. Benjamin Seidler, did emergency root canal therapy on the same abscessed teeth previously treated by the defendant and two newly abscessed teeth to prepare them for the new crowns and jackets.
Both Dr. Grunberg and Dr. Trattner testified at the trial that they both independently of each other examined the mouth of the plaintiff clinically and by X ray in February of 1952. Their testimony was substantially similar and to the same effect: that they found the mouth of the plaintiff to have had normal hygienic *671 care; that the X rays showed decay underneath the crowns and jackets; that they found dead nerves in the teeth treated by the defendant; that they found the margins of the crowns and jackets overhanging and not contiguous to the tooth structure; that the crowns and jackets were one to three millimeters short of the gingival margin with rampant decay around the edges of the crowns and jackets.
Under the generally accepted standard of dentistry as practiced by the average practitioners in this area, crowns and jacket are required to be made to fit contiguous with the dental surface and their ends or junction should be at the gingival margin or in the free space just beyond the gingival margin.
Dr. Trattner testified unequivocally that this standard method Avas not folloAved by the defendant and that the croAms and jackets which the defendant made for the plaintiff failed to cover the dental surfaces and did not extend to the gingival margin.
The plaintiff’s introduction of expert dental testimony that the defendant’s procedure was a departure from the approved dental method in general use raised an issue as to the dental negligence of the defendant (Pike v. Honsinger, 155 N. Y. 201; Bernstein v. Greenfield, 281 N. Y. 77; Alteresko v. Phillips, 208 App. Div. 171). The evidence adduced shows that the defendant left the dental surface of the teeth exposed below the level of the crowns and jackets, and did not fit the crowns and jackets contiguous to the dental surface of the teeth. I find and conclude therefore that the work of the defendant was not in accordance with the approved dental method in general use.
A departure from the approved dental method in general use is not in and of itself negligence per se. In accordance Avith standard procedure, a dentist makes a crown to fit snugly and to cover the stump of the tooth to or beyond the free margin of the gum. It is not disputed that an improperly fitted croAvn or jacket could lead to decay with accompanying recession. It is significant to note in this connection that upon questioning by the court the defendant admitted a tooth itself would not decay under a properly fitted crown or jacket.
The X rays taken in February, 1952, show decay underneath the croAvns and jackets, Avith decay rampant around the exposed level of the teeth at the gum margins. In the opinion of Dr. Grunberg and Dr. Trattner, the crowns and jackets were not made by the defendant to cover each tooth completely to protect the tooth against decay, and the shortness of the crowns and jackets and the failure of the defendant to fit the crowns and jackets contiguous to the teeth invited and caused the decay *672 which appeared to be of a one-year or two-year duration. The defendant testified that the rampant decay allegedly caused by the improperly fitting by him of the crowns and jackets might well be attributable to one or any of several causes and cannot be definitely assigned to his work.
There.is sufficient evidence adduced to find that the decay found in the mouth of the plaintiff would not be present there in whole or in part except for the improper fitting of the crowns and jackets. From the evidence and the facts as outlined, I find that the negligence of the defendant with resulting injury and liability is established (Cornbrooks v. Terminal Barber Shops, 282 N. Y. 217; Simon v. Freidrich, 163 Misc. 112; Stephenson v. Parker, 254 N. Y. 561).
It does not appear that the plaintiff did anything to bring about the condition of her mouth about which she complains. She exercised reasonable care commensurate with the circumstances. She kept her mouth hygienically clean. She was co-operative with the defendant and reported her complaints promptly to the defendant as soon as they occurred and relied on his professional skill and knowledge.
In the light of all the attending circumstances, I find and conclude that the plaintiff sustained her burden of proof in this case. I find and conclude that the dental services rendered to the plaintiff after February, 1952, were necessary and consequential to the defendant’s negligence. The plaintiff did not impress the court as exaggerating her pain and suffering. Judgment is accordingly granted in favor of the plaintiff in the sum of $6,000. All reserved trial motions are resolved in accordance with this decision. The defendant is granted 10 days ’ stay of execution and 30 days in which to make a case on appeal.