**ATLANTIC MUTUAL INSURANCE COMPANY, as insurer of the YACHT PLAYBOY, Plaintiff,**

v.

**CLEARVIEW CLUB, INC., and Floyd Layman, Defendants.**

No. 63–A–863.

United States District Court
E. D. New York.

Feb. 17, 1967.

Haight, Gardner, Poor & Havens, New York City, for plaintiff; J. M. Estabrook and Michael E. Curan, New York City, of counsel.

Zweibel, Steger & Foster, New York City, for defendants; Herbert J. Kaplow. Morris Zweibel, New York City, of counsel.

BARTELS, District Judge.

Arthur Lonschein and John Mazzuka were the owners of the yacht Playboy, a wooden 38-foot Chris Craft cabin cruiser with two six-cylinder engines, and were also members of Clearview Club, Inc. This club owned and operated a marina at 168–11 Powell's Cove Boulevard, Whitestone, New York, at which it maintained a gasoline and docking barge where it serviced and fueled boats.

On July 24, 1960, shortly after Noon, Lonschein boarded the Playboy, lying 200 yards from the Club's dock, and after starting the engines, headed the vessel for the dock through a heavy tide. He was compelled to wait ten or fifteen minutes off the dock before the vessel could be moored, during which time both engines were engaged in fighting the tide. After the yacht was tied at the dock, the temperature of the engines was approximately 150 degrees and the manifold of the engines was considerably hotter. Knowing that the starboard tank was empty, Lonschein instructed Floyd

Layman, an employee of the club, to fill that tank from the gas pump on the dock. At the time Lonschein had turned off the radio and all switches on the boat. Shortly thereafter he left the yacht and returned five minutes later escorting his co-owner John Mazzuka and two guests aboard the vessel. While on the dock he received from Layman a bill for the gas which he charged without knowing the quantity of the gas purchased. The party was aboard the yacht scarcely five minutes when Lonschein smelled an odor of gas and after waiting two or three minutes ordered the guests to leave, which they did. Mazzuka was directed to the bridge and Lonschein went aft, got on his knees, lifted the hatch and looked down at the bilge and saw purplish fluid and at the same time smelled a strong odor of gas. At the time no electrical equipment was in operation but the sea was choppy and the boat was rocking a little. As Lonschein turned toward the end of the vessel he heard the dull thud of an explosion and he as well as Mazzuka were catapulted from the boat into the water and both were seriously burned. The Playboy was for all practical purposes destroyed by the ensuing flames.

The yacht was insured with the plaintiff in the amount of $8,200 against hull damage, which sum the plaintiff paid to the owner and now brings this action under 28 U.S.C.A. § 1333 as subrogee to recover said sum from the defendants. The value of the boat was established and the only question to be determined is how the accident occurred.

The Court finds that the accident was caused by the negligence of employee Layman, for which the defendant Clearview Club, Inc., is chargeable. This conclusion is predicated upon the testimony and reasonable inferences therefrom indicating that Layman pumped a large quantity of gasoline into the bilge of the Playboy by placing the gasoline hose from the pump into the wrong hole. There were four holes above the transom on each side of the vessel. Two outboard holes were dingy davits or flagpole holes,

2½″ in diameter, flush with the deck and circled by a metal flange and covered with plastic covers to keep the bilge dry. The two inboard holes were gasoline holes or tank fillers close to the davit holes but were slightly smaller than the davit holes and raised above the deck with metal covers which screwed on. The tanks did not leak and were not connected. While there was no gas gauge on them, they would overflow through spill pipes visible on each side of the vessel when filled to capacity. Instead of placing the gasoline hose into the tank hole, Layman placed the hose into the davit hole leading into the bilge of the yacht, which was dry. The tank did not hold any more than 100 gallons; yet 136 gallons were pumped into the vessel, many if not all of which, found their way into the bilge. Since Layman could not see the meter on the pump from where he stood on the yacht, he proceeded to empty the gasoline through this davit hole into the bilge of the Playboy, thus creating a dangerous condition from which the resulting explosion was a reasonably foreseeable event. Elkton Auto Sales Corporation v. State of Maryland, 4 Cir. 1931, 53 F.2d 8, 11.

"If the defendant spills gasoline about the premises, he creates a 'condition;' but his act may be culpable because of the danger of fire. When a spark ignites the gasoline, the condition has done quite as much to bring about the fire as the spark; and since that is the very risk which the defendant has created, he will not escape responsibility." Prosser, Law of Torts, § 49, at 286 (3d ed. 1964). From the testimony of the two experts for the plaintiff it appears that gasoline evaporates very quickly and creates a vapor which is heavier than air, and that when this vapor blends with the air in proportions between 1.3% and 6% vapor air mixture, an explosive mixture results. When the hatch is open there is a down draft bringing in the air containing oxygen, thus tending to reduce the blend of gasoline vapor down to a range between 1.3% and 6%. A situation is thus created where an explosion

could be triggered by a spark or by heat generated from some source. Such an explosion could have occurred by contact with hot portions of the engines which had been in operation fifteen minutes prior thereto, or by contact with some hot wires or by a spark from static electricity. Static or frictional electricity could have been generated from the friction created by the gasoline moving in the bilge of the rocking boat and could have been sparked by contact with an object of a lower potential such as the propeller shaft, engine or electrical terminals which were not grounded.

 Having established that the defendants' negligence produced a highly dangerous condition of gasoline vapor which could be ignited by a static spark generated as earlier indicated, it was unnecessary for the plaintiff to show that the spark was actually produced since such an inference could be reasonably drawn from the circumstances. Standard Oil Co. of New York v. R. L. Pitcher Co., 1 Cir. 1923, 289 F. 678. It was the duty of the club's employee not to create a condition so dangerous that it could cause an explosion, even though he might not foresee the exact manner in which the cause might be set into operation. Tropea v. Shell Oil Company, 1962, 307 F.2d 757. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." Munsey v. Webb, 1913, 231 U.S. 150, 156, 34 S.Ct. 44, 45, 58 L.Ed. 162. Under the present circumstances plaintiff is not required to negate every other possible cause for the accident, Betzag v. Gulf Oil Corp., 1949, 298 N.Y. 358, 83 N.E.2d 833, rearg. denied, 298 N.Y. 916, 85 N.E.2d 59, nor to isolate and identify the manner in which that cause was activated. "Circumstantial evidence is sufficient if it supports the inference of causation or of negligence even though it does not negative the existence of *remote* possibilities that the injury was not caused by the defendant or that the defendant was not negligent. 'It is enough that he [plaintiff] shows

facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.' Ingersoll v. Liberty Bank, 278 N.Y. 1, 7 [14 N.E.2d 828, 830]; Cornbrooks v. Terminal Barber Shops, Inc., 282 N.Y. 217, 223 [26 N.E.2d 25]; Rosenberg v. Schwartz, 260 N.Y. 162, 166 [183 N.E. 282]; Martin v. Herzog, 228 N.Y. 164, 170 [126 N.E. 814]." Dillon v. Rockaway Beach Hospital, 1940, 284 N.Y. 176, 179, 30 N.E.2d 373, 374.

The Court concludes that the defendants were negligent in creating a highly dangerous condition and that this negligence caused the explosion and the constructive loss of the yacht Playboy. The above constitutes the Court's findings of fact and conclusions of law. Judgment for the plaintiff is ordered accordingly.