■ RICHARD FOLEY, an Infant, by His Parent JOHN FOLEY, Appellant, v. FLUSHING HOSPITAL AND MEDICAL CENTER et al., Respondents.— In a negligence and medical malpractice action to recover damages for personal injuries, plaintiff appeals from a judgment of the Supreme Court, Queens County, entered November 12, 1971, upon the trial court's dismissal of the complaint as against all defendants, at the close of plaintiff's case at a jury trial. Judgment affirmed, with costs. No opinion. Rabin, P. J., Hopkins and Latham, JJ., concur; Shapiro, J., concurs in the affirmance as to defendant Frank Labriola, but otherwise dissents and votes to reverse and to grant a new trial as against defendants Flushing Hospital and Medical Center and Edmund Di Lello, with the following memorandum, in which Martuscello, J., concurs: I agree with the majority that the judgment should be affirmed as to the defendant Labriola, the obstetrician, but I believe that the record presents a question of fact as to negligence and malpractice on the part of respondents Flushing Hospital and Di Lello, the pediatrician. The infant plaintiff was born on October 26, 1957. The obstetrician, Dr. Labriola, testified that it was a "normal spontaneous delivery", that is, a delivery without the use of mechanical aids. After delivery the baby was examined and found to be in good condition. After being taken from the delivery room to the nursery, a pediatrician — Dr. Di Lello — was assigned (apparently by the hospital) to treat the infant. The baby chart indicated a visit by Dr. Labriola each day from delivery to discharge. The hospital chart shows that on October 27 Dr. Di Lello prescribed "acromycin 25 mgm, Q 8H" (every eight hours). (The baby was discharged from the hospital on November 9, 1957.) At the bottom of the record Dr. Di Lello, on January 30 1958, made another entry in the record which reads "Acromycin given orally". He admitted that either on that day, or the day before, the infant's father appeared in his office and raised the question of a sciatic injury to his son secondary to intramuscular buttock injections. After being discharged from the hospital, the infant was found to be suffering from an imbalance in motor power secondary to a sciatic nerve injury — the nerve that comes out of the buttock and supplies the muscles below the leg. In the opinion of plaintiff's expert the child's condition was the result of trauma to the left buttock. The father testified that on November 9, 1957, as a nurse was readying the infant to be taken home, he noticed a black and blue mark on the infant's left buttock. On January 29, 1958 Miss Stines, Medical Record Librarian of the defendant hospital, wrote a letter to a Dr. Perry at the New York hospital, where the infant was then being treated. The last line on the first page of the letter states "Achromycin [sic], 25 mgm. every eight hours, orally, was started on October 27th, and discontinued on October 29th." The word "orally" is in darker type and extends into the right-hand margin, suggesting (and a jury

could so find) that it was typed into the letter at some time after the letter's completion. Miss Stines also testified that the order slip (ticket) for the acromycin was not in the hospital record. This might have shed some light on whether the acromycin was to be administered orally or by injections. Under these circumstances — with the suspicion attached to the hospital records, and the testimony of the father as to the black and blue mark on the infant's left buttock — the trial court was not justified in dismissing the complaint at the end of plaintiff's case. Testing plaintiff's proof in a light most favorable to him (*Perillo* v. *St. Catherine's Hosp.*, 31 A D 2d 942), the evidence was sufficient to make out a prima facie case against Dr. Di Lello for negligently administering an intramusclar injection. As the court said in *Dillon* v. *Rockaway Beach Hosp.* (284 N. Y. 176, 179): "Circumstantial evidence is sufficient if it supports the inference of causation or of negligence even though it does not negative the existence of *remote* possibilities that the injury was not caused by the defendant or that the defendant was not negligent. 'It is enough that he [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.' (*Ingersoll* v. *Liberty Bank*, 278 N. Y. 1, 7; *Cornbrooks* v. *Terminal Barber Shops, Inc.*, 282 N. Y. 217, 223; *Rosenberg* v. *Schwartz*, 260 N. Y. 162, 166; *Martin* v. *Herzog*, 228 N. Y. 164, 170.)" (emphasis and bracketed word in original). Since Dr. Di Lello was apparently assigned by the hospital and since it had concurrent control over the infant, the case against the hospital should also have gone to the jury (*Matlick* v. *Long Is. Jewish Hosp.*, 25 A D 2d 538). I am also of the opinion that the trial court erred in refusing to permit plaintiff's expert to testify in answer to a hypothetical question whether the infant's injury had been caused by an intramuscular injection and whether such an injection, resulting in damage to the sciatic nerve, constituted a departure from standard medical practice (cf. *Schlansky* v. *Augustus V. Riegel, Inc.*, 9 N Y 2d 493, 497; CPLR 4515).