**Leslie LEVI, Plaintiff,**

v.

**Howard C. NICKERSON, Defendant.**

United States District Court
S. D. New York.
May 11, 1959.

Zichello & Catenaccio, New York City, Philip Zichello, New York City, of counsel, for plaintiff.

John F. Nixon, New York City, William F. Parker, Miami, Fla., of counsel, for defendant.

DAWSON, District Judge.

In this action tried by the Court without a jury, plaintiff, Leslie Levi, a New York businessman, sues Howard C. Nickerson, a marine surveyor of Florida, alleging that he retained the defendant to determine and test the soundness of construction, the safety and seaworthiness and value of the vessel Waterloo, and that relying on such survey plaintiff bought the vessel. Plaintiff alleges that the defendant wrongly reported that the vessel was soundly constructed, safe and seaworthy, but that in fact it would cost $30,000 to put the boat in proper condition. Plaintiff sues for $30,000, by reason of the alleged negligence of said defendant and his failure to perform properly the duties which he owed to the plaintiff.

The facts as developed at the trial show that the plaintiff had been acquainted with boats and small yachts for many years. In the spring of 1957, while he was in Florida, he began negotiations for the purchase of a twenty year old motor-sailing boat named the Waterloo (now called the Water Lilly). After looking at the boat he gave a written order to purchase her for $25,000, subject to inspection, and put down $2,500 as a deposit. The agreement for purchase stated that it was "subject to inspection and survey." The plaintiff thereupon investigated several marine surveyors recommended to him and finally retained the defendant, Howard C. Nickerson, to make a survey of the boat. Plaintiff sought a very prompt report on the survey. The defendant explained to the plaintiff that there are two types of marine surveys, one a regular survey, which consisted of a close scrutiny of all the surfaces he could reach, sounding with a wooden hammer or mallet and picking with an ice-pick, or, two, an intensive survey which would include making a very thorough boring of the hull surfaces, taking soundings, and the removal of parts of the yacht's mast, machinery and rigging. The latter type of survey would require, of course, the consent of the owner, would take additional time and would make it necessary on completion of the survey to restore the boat to its original condition by replacing any parts removed and filling, caulking and painting over any surfaces which had been disturbed. Plaintiff was not the owner of the yacht and did not give any instructions to make borings or removals in the course of the survey. He seemed to be in a hurry to have the survey completed.

Defendant made the survey of the boat. He retained the services of a Mr. McIlanney, a boat builder with many years of experience, to survey the yacht hull. Defendant not only went over the ship and inspected the various parts, and got the benefit of Mr. McIlanney's services, but he also made a trial run of the yacht. He testified that he called the attention of the plaintiff to some bad wood in the timber heads and suggested borings to discover the extent of the condition, but the plaintiff said he did not wish to bother with that. The defendant made an oral report on the condition of the boat to the plaintiff and told him that it would be necessary to make certain repairs in order to put the boat in good condition. Plaintiff, as a result of this report, reduced his offer to $23,000, which was accepted by the seller of the boat. Plaintiff then completed the purchase of the boat, without waiting for the written survey and returned to New York. When he returned to New York he received the written survey report of the defendant, which was received in evi-

dence as Plaintiff's Exhibit 3. This written survey, dated April 23, 1957, described the boat and its various appurtenances and concluded:

"All other items appear to be in good condition unless otherwise mentioned in survey report.

"This survey was made without making any removals and/or borings of structural members.

"The main engines and auxiliaries were surveyed while in operation and without making any removals of internal parts and/or external accessories."

The survey concluded with a page of recommendations. It was pointed out in the recommendations that with respect to the bottom four butts were found to be leaking; with reference to the decks it was reported that the bottom of the inboard door post in the aft companionway was rotted at the sill, and that various deck seams needed to be recaulked. It was reported with respect to the bulwarks that four timber heads on the port side and eight on the starboard side would have to be removed and replaced where they were found to be deteriorated from dry rot. It was reported that the standing rigging was found to be rusted and in poor condition; that the sail seams had deteriorated and that certain repairs would have to be made to the electronic equipment, the bilge pumps and the firefighting equipment. At the conclusion of these recommendations the surveyor reported:

"The captioned vessel is well constructed, with proper care and recommendations complied with, should give many years of service as a pleasure craft."

The plaintiff took title to the boat, paid the $23,000 purchase price and sailed the boat to New York, where it arrived without serious incident. While at City Island, New York, the boat suffered some damage due to a hurricane. Plaintiff made a demand upon his insurance company for reimbursement for the hurricane damage. The boat was surveyed at this time to ascertain the amount of the damage by a surveyor named Louis W. Teller. The plaintiff had known this surveyor for some years. In fact, Teller had asked the plaintiff to send him to Florida to survey the boat before he bought it, but plaintiff had not done this. Mr. Teller, while surveying the boat for the purpose of giving a report to the insurance company, and while in this capacity of a representative of the insurance company, then undertook, for a fee of $500 from the plaintiff, to make a survey for the plaintiff on the condition of the boat. He rendered a report dated July 20, 1957, which was received in evidence as Plaintiff's Exhibit 4. Mr. Teller, who testified at length at the trial, was a self-assured, rather aggressive gentleman who gave the impression to the Court that he was more interested in establishing, for the benefit of Mr. Levi, that he should have been retained to make the original survey than he was in giving an objective report on the condition of the boat. His survey was an argumentative report relating to conditions which he claimed "should have been discovered and reported to you before the purchase of this yacht." He listed some twenty-three items which he said would have to be repaired or corrected. He estimated the cost of such repairs and corrections would be in excess of $21,000. He ended his report by stating that "I would have advised you to refrain from the purchase of this yacht, due to her poor condition throughout. In the event that you would have insisted on purchasing this boat with all the defects and damage present, I would have suggested a top figure not to exceed $7,500.00, in my opinion."

Plaintiff's case regarding the condition of the boat was based solely upon the findings and testimony of Mr. Teller. Since the purchase of the boat, Mr. Levi has sailed it to and from Florida. He has chartered it to other persons. He has had certain repairs made upon it, but not the elaborate repairs recommended by Mr. Teller.

Defendant called two disinterested expert witnesses, both of whom were ac-

quainted with the boat. One was a Mr. Freund, a naval architect and boat builder of long experience. He was acquainted with the boat and stated that the yacht was sound and seaworthy. The other witness was a Mr. Ebright, a yacht broker who knew the boat and testified that it was sound and seaworthy. Both witnesses testified that the boat was well worth the $23,000 the plaintiff had paid for it.

It must be kept in mind that the plaintiff realized he was buying a second-hand boat, 20 years old. He realized from the report of the defendant that there were certain defects in the boat and that certain repairs would have to be made. The report of the defendant showed that there was dry rot in certain places on the boat. With knowledge of these facts the plaintiff purchased the boat at a price which was obviously the price of a second-hand, aged boat, rather than a new yacht. Plaintiff has not shown that the boat, in actual operation by him since the time he bought it, has been unsafe or unseaworthy. He offered testimony of certain repairs made by him but none of them were beyond the type of repairs that would be made in the course of the ordinary ownership and operation of a second-hand yacht.

Having heard the witnesses and observed their demeanor on the stand the Court is convinced that the defendant and his assistant, Mr. McIlanney, made a careful survey of the boat within the limits which they were hired and permitted to make, and which they described; that the survey report submitted by the defendant was a fair and accurate summary of the condition of the boat and that the plaintiff was not injured as a result of any negligence on the part of the defendant. The report of Mr. Teller indicated the repairs which would have to be made to put the boat in the equivalent of new condition, but this was not the type of survey which was required by the plaintiff or which could have been expected by him for the fee of $100 which he paid to the surveyor. Nor, apparently, did plaintiff require a boat in this condition, because he has not put out the amounts to put the boat in the condition which Mr. Teller recommended.

The Court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that the defendant was negligent in the job which he undertook and also finds that the plaintiff has suffered no damages by any of the actions or report of the defendant. The complaint is dismissed, with costs.

This opinion shall constitute the findings of fact and conclusions of law of the Court.

Submit judgment in accordance herewith.