Richard W. Wallach, J.
This case illuminates the need for legislation presently pending in Congress for stricter regulation of the automobile warranty practices of domestic auto dealers and manufacturers. It is purely fortuitous that plaintiff can recover herein wholly apart from the ambiguous and misleading provisions of her particular new car “ warranty.”
Plaintiff purchased a 1967 Oldsmobile Toronado in February, 1967, from a dealer known as Houston Olds, who promptly went out of business. The car was covered by the 1967 Oldsmobile Owner Protection Plan and New Vehicle Warranty, a complex document embodied in a 22-page booklet crammed with detailed maintenance instructions addressed to the purchaser, the breach of which is asserted by defendant General Motors Corp. (“ GM ”) to invalidate the warranty.
After the original seller’s business demise, plaintiff endeavored to comply with the warranty’s servicing requirements, and the proof showed visits to the defendant Golf Oldsmobile Inc. (“ Golf”) for regular servicing. In the course of an evening drive in September, 1968, within the two-year warranty period, plaintiff’s son noticed smoke emanating from the engine, and immediately stopped driving the vehicle. All parties agree that the engine overheated, and that when towed into Golf’s service garage, the engine was irreparably damaged and required complete replacement by Golf, for which plaintiff paid in full.
Plaintiff cannot recover her cost of engine replacement upon the theory of breach of warranty against either defendant, since she offered no proof that the damage to the engine was due to 1 ‘ defects in material and workmanship under normal use and service,” the entire ambit of the warranty. The sole proof as to the cause of the damage to the engine was the absence of a vital special coolant.
Defendant’s experts testified that upon inspection immediately after the incident the cooling system was intact, and had no leaks or other defects. Defendants’ theory wa's that plaintiff had failed to maintain the coolant at a proper level, and that this alone was the cause of the loss.
Defendants argue that in order to preserve the warranty plaintiff had a duty to submit this car for servicing every 60 days for an oil change, and that under the catchline ‘ ‘ Engine Oil” on page 15 of the booklet the last sentence should have alerted plaintiff to the need for checking the coolant level at similar 60-day intervals. This terse direction reads: “At this time interval (60 days) all fluid levels should be checked and replenished.” However, inconsistent with the foregoing is the *988 following item on the same page: “ Engine Coolant — Every two years the cooling system should he serviced
Defendants’ own evidence showed that plaintiff brought the car in for 'servicing four days before the critical incident. I hold that while defendants can escape warranty liability under the facts of this case, they are nonetheless liable under well-recognized principles of tort law.
The suggestion that plaintiff should have reconciled the conflicting instructions in the maintenance booklet with respect to coolant lies ill in the mouth of the dealer, Golf. The latter, a specialist in a specially skilled calling (auto mechanics) is charged with a higher standard of care than plaintiff. Golf’s failure to check the coolant level four days prior to the incident must be regarded as negligence (Cornbrooks v. Terminal Barber Shops, 282 N. Y. 217; Levi v. Nickerson, 172 F. Supp. 867). Although plaintiff offered no proof of the applicable standard of care, this gap in the case is supplied by evidence which defendants offered to show that even an unskilled purchaser should have known of the cooling maintenance requirements. At the close of the ease the court was satisfied that a prudent mechanic regularly servicing this type of GM car, knew or should have known of the perils of a depleted coolant supply.
GM is liable not in contract, but for breach of a manufacturer’s duty to warn (Kaempfe v. Lehn & Fink Prods. Corp., 21 A D 2d 197). True, a manufacturer is not required to anticipate misuse (Beckhusen v. Lawson Co., 9 A D 2d 536, revd. on other grounds 9 N Y 2d 726) but GM failed to establish this defense by a preponderance of the credible evidence.
As the court observed in Alfieri v. Cabot Corp. (17 A D 2d 455, 460): “ It is not essential that there be a defect in the manufacture of the chattel before liability may be imposed where, as here, the manufacturer knew the purpose for which the chattel might be used and was aware of the dangers surrounding its use under at least one of the invited conditions ” (italics added). This reasoning is not limited to personal injury, but also applies with equal force to tortious property damage.
Although the short-form complaint sounds entirely in warranty, the court grants a motion to conform the pleadings to the proof, with exception to defendants. Plaintiff was examined before trial here last October and in view of complete disclosure there is no surprise or prejudice to defendants.
Accordingly, plaintiff is entitled to judgment against defendants for the sum demanded in the complaint, with interest from October 1,1968.